[Cite as *State v. Braun*, 2023-Ohio-1683.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
DARKE COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Appellee | : | C.A. No. 2022-CA-12 |
| | : | |
| v. | : | Trial Court Case No. 22-CR-00210 |
| | : | |
| MICHAEL D. BRAUN | : | (Criminal Appeal from Common Pleas |
| | : | Court) |
| Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on May 19, 2023

. . . . . . . . . . .

R. KELLY ORMSBY, Attorney for Appellee

M. DAVID MERRELL, Attorney for Appellant

. . . . . . . . . . . .

HUFFMAN, J.

{¶ 1} Michael D. Braun appeals from the judgment entry of conviction which found him guilty of one count of aggravated possession of drugs following his no contest plea. Braun argues that the court erred in overruling parts of his motion to suppress. We affirm the judgment of the trial court.

**Procedural History**

{¶ 2} Braun was indicted on one count of aggravated possession of drugs (methamphetamine), a second-degree felony, on July 29, 2022; he pled not guilty. He filed a motion to suppress evidence on September 23, 2022. On October 19, 2022, the court overruled in part and sustained in part Braun's motion to suppress. On November 8, 2022, Braun withdrew his former not guilty plea and pled no contest. The court found him guilty and sentenced him to an indefinite term of imprisonment of a mandatory minimum of two years to a maximum of three years and a mandatory fine of $7,500. The court stayed Braun's sentence pending appeal.

### Argument and Analysis

{¶ 3} Braun asserts the following assignment of error:

THE TRIAL COURT ERRED BY OVERRULING DEFENDANT APPELLANT'S MOTION TO SUPPRESS IN THAT POLICE OFFICERS DID NOT POSSESS REASONABLE AND ARTICULABLE SUSPICION THAT HE WAS ARMED AND DANGEROUS TO JUSTIFY A WARRANTLESS PAT DOWN SEARCH.

{¶ 4} The following facts were adduced at the hearing on the motion to suppress: On February 27, 2022, at around 10:00 p.m., Greenville police officers Trenton Spradley and Ben Conley, whom Spradley was training, stopped Braun in a 2002 Trailblazer for fictitious plates at the intersection of East Main and Ash Streets in Greenville. Prior to the stop, the officers had learned through the Law Enforcement Automated Data System that the vehicle's license plates belonged to a 2011 Dodge station wagon. Braun, the sole occupant, stopped his vehicle on a residential street off East Main Street. Off.

Conley approached the driver's side of the vehicle, and Off. Spradley approached the passenger's side. Without being asked, Braun advised Conley that he did not have a valid driver's license. In response to a question by Conley, Braun stated that his license had been suspended. While Conley spoke to Braun, Spradley, with the use of his flashlight, observed a pipe with burnt residue on the front passenger seat. While Conley ran the vehicle's VIN number, Spradley opened the passenger door, shined his flashlight on the pipe, and asked Braun if it was a marijuana pipe. Braun responded affirmatively. Spradley asked Braun if he had a medical marijuana card, and Braun said no. Spradley then asked Braun if there were any drugs in the vehicle, and Braun responded that there was marijuana in the backseat.

{¶ 5} Spradley instructed Conley to have Braun step out of the vehicle for officer safety because he intended to search the car. Conley asked Braun to stand in front of the officers' cruiser during the vehicle search, and a video from the cruiser camera was admitted into evidence. Conley asked Braun if he had any weapons on his person and advised him that he intended to pat him down to check for weapons. Before Conley commenced the pat down, Braun voluntarily and without any prompting by the officers reached into his overalls and handed Conley a four-to-six-inch jar containing a green leafy substance that he had removed from his clothing. Braun told Conley the substance was marijuana, and Conley set the jar on the hood of the cruiser.

{¶ 6} Conley then patted Braun down, finding no weapons; he subsequently searched Braun's person based on the probable cause resulting from Braun's voluntary production of the jar of marijuana. On Braun's person, Conley located an eyeglasses

case that contained a pipe with burnt residue that Conley believed to be methamphetamine, a zippered wallet, and two smaller jars that Braun indicated contained methamphetamine. Conley testified that Braun had spontaneously advised him that he had methamphetamine on his person before it was located. Spradley then advised Braun of his *Miranda* rights. After returning to Braun's vehicle and completing the search, Spradley located additional glass pipes and suspected marijuana in various glass jars and a small portable scale. Braun was released from the scene.

{¶ 7} In ruling on the motion to suppress, the trial court found that reasonable articulable facts had supported the traffic stop due to the fictitious plates and that Braun's removal from the vehicle had been justified due to the absence of a validly-licensed vehicle and unlicensed driver, an arrestable offense. The court noted that a marijuana pipe had been in plain view on the passenger's seat, further justifying the search of the vehicle.

{¶ 8} Regarding the reasonableness of the pat down, the court determined:

At the moment when the Defendant was taken to the front of the cruiser, Officer Conley began the process of patting down the Defendant – for the apparent purpose of officer safety. However, he did not articulate to the Court circumstances affecting officer safety, such as the surroundings, time of day, lighting, presence of other public safety officers, presence of other individuals, the demeanor, behavior, and cognitive responsiveness of the suspect, and other articulated facts and circumstances. Indeed, the Defendant's cooperative and congenial

demeanor mitigate against such concerns. * * * Nonetheless, from the evidence presented, the Court finds the bulky clothing of the Defendant under dim lighting to be circumstances which justify a pat down for officer safety purposes to detect items that could be used as a weapon. Therefore, the court finds justification for the pat down.

* * * The *Terry* pat down does not allow an officer to reach or look into a pocket or the interior of most clothing. Similarly, the limitation prevents searching inside the Defendant's wallet and glasses case. Once removed from the Defendant, there was no officer safety reason to inspect the contents of the wallet or glasses case. * * *

{¶ 9} The court further found that Braun's handing Conley the jar of marijuana prior to the pat down and Braun's statement regarding drugs on his person justified "the ending of the *Terry* pat down and the commencement of a more intrusive search of his clothing for the presence of illegal drugs * * * ." The court found that the marijuana and methamphetamine were admissible. However, the court found (in a footnote) that any evidence taken from the glasses case and wallet was inadmissible.

{¶ 10} Regarding the admissibility of Braun's statements, the court found that questions "related to officer safety (for example, the presence of guns and knives) are appropriate." It determined that once Braun admitted to the presence of drugs on his person, "questions regarding the location of the drugs within his clothes are admissible." The court noted that Spradley provided *Miranda* warnings to Braun at 10:09:04 p.m. and that "questions and answers by the Defendant after 10:09:04 p.m. are not in violation of

the privilege against self-incrimination."

{¶ 11} Braun argues on appeal that there was "a complete absence of testimony regarding a 'reasonable and articulable suspicion' from the officers conducting the search" of Braun's person that he was " 'armed and dangerous.' " Braun asserts that the video of his detention reflects that Conley removed an item from Braun's pocket before Braun had advised Conley that he had methamphetamine on his person. The State responds that the trial court did not err when it found that the *Terry* search and subsequent probable cause search of Braun were lawful.

{¶ 12} " 'Appellate review of a ruling on a motion to suppress presents a mixed question of law and fact. An appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. But the appellate court must decide the legal questions do novo.' " *State v. Mundy*, 2021-Ohio-605, 168 N.E.3d 882, ¶ 9 (2d Dist.), quoting *State v. Turner*, 163 Ohio St.3d 421, 2020-Ohio-6773, 170 N.E.3d 842, ¶ 9.

{¶ 13} The Fourth Amendment to the United Stated Constitution prohibits unreasonable searches and seizures. *State v. Thompson*, 2d Dist. Montgomery No. 25658, 2013-Ohio-4825, ¶ 10.

For a search or seizure to be reasonable under the Fourth Amendment, it must be based upon probable cause and executed pursuant to a warrant. *Katz v. United States* (1967), 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576, 585; *State v. Brown* (1992), 63 Ohio St.3d 349, 350, 588 N.E.2d 113, 114. This requires a two-step analysis. First, there

must be probable cause. If probable cause exists, then a search warrant must be obtained unless an exception to the warrant requirement applies. If the state fails to satisfy either step, the evidence seized in the unreasonable search must be suppressed. *Mapp v. Ohio* (1961), 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081; *AL Post 763 v. Ohio Liquor Control Comm.* (1998), 82 Ohio St.3d 108, 111, 694 N.E.2d 905, 908.

*State v. Moore*, 90 Ohio St.3d 47, 49, 734 N.E.2d 804 (2000).

{¶ 14} "A showing of probable cause requires proof less than that beyond a reasonable doubt or by a preponderance of the evidence; it is only the probability, and not a prima facie showing, of criminal activity. * * *." *State v. Glynn*, 2d Dist. Greene No. 2020-CA-13, 2020-Ohio-4763, ¶ 26. Probable cause "to search focuses on whether, based on the current facts and circumstances, a reasonably prudent person would be warranted to believe that a search would reveal evidence of a crime." *State v. Carter,* 2d Dist. Montgomery No. 19105, 2002 WL 538871, *2 (Apr. 12, 2002). "Probable cause must be based upon objective facts that would justify the issuance of a warrant by a magistrate." *Moore* at 49. "Analyzing whether the police had probable cause to search in any given situation requires us to review the 'totality of the circumstances.' " *State v. Shaw,* 2d Dist. Miami No. 2010-CA-23, 2011-Ohio-3331, ¶ 19, citing *State v. Moore,* 90 Ohio St.3d 47, 2000-Ohio-10, 734 N.E.2d 804.

{¶ 15} The parties do not dispute that Offs. Conley and Spradley lawfully stopped Braun's vehicle for fictitious plates and lawfully proceeded to search it after Spradley viewed the marijuana pipe on the front passenger seat. *See Thompson* at ¶ 11, ¶ 13.

To accomplish the search of the vehicle, Spradley instructed Conley to remove Braun from the vehicle, because "officers may require that the occupants of a motor vehicle exit the vehicle pursuant to a traffic violation because of the legitimate safety concerns of both the officer and the occupants." *State v. Brock*, 2d Dist. Montgomery No. 23665, 2010-Ohio-5885, ¶ 17, quoting *Pennsylvania v. Mimms*, 434 U.S. 106, 109-11, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977).

{¶ 16} We have viewed the video of the traffic stop and the subsequent search of Braun. As this Court has noted, " '[d]uring the course of an investigatory stop and detention, law enforcement officers may conduct a pat down search for weapons if the officer have reasonable grounds to believe that the suspect is dangerous.' " *State v. Warnick*, 2d Dist. Miami No. 2019-CA-14, 2020-Ohio-4240, ¶ 25, quoting *State v. Keggan*, 2d Dist. Greene No. 2006-CA-9, 2006-Ohio-6663, ¶ 26. While the testimony before the trial court lacked any discussion related to reasonable grounds for the officers initially to believe that Braun was armed or dangerous, no pat down of Braun initially took place.

{¶ 17} However, we conclude that, when Braun voluntarily and without prompting by either officer handed a jar of marijuana from his overalls to Conley (when no pat down or search had yet taken place), Conley at that time had probable cause to search Braun's person whether or not he had reasonable grounds to believe that Braun was armed or dangerous. In *Moore*, 90 Ohio St.3d 47, 49, 734 N.E.2d 804, during a valid traffic stop, law enforcement officers detected the strong odor of marijuana emanating from Moore's vehicle and person. *Id.* at 47. After concluding that the officers could search Moore's vehicle pursuant to the "well-established automobile exception to the warrant

requirement," the court addressed the search of Moore's person. *Id.* at 51. The investigating officer admitted at the suppression hearing that he had not feared for his safety, that the search of Moore had not been a pat down for weapons, and also that search had not been justified as being incidental to arrest. *Id.* at 52. *Moore* held that, in certain situations, exigent circumstances justify a warrantless search. *Id.* There must be "compelling reasons" or "exceptional circumstances" to justify a warrantless intrusion, such as in the automobile exception to the warrant requirement due to a vehicle's "inherent mobility." *Id.* "A warrantless search is also justified if there is imminent danger that evidence will be lost or destroyed if a search is not immediately conducted." *Id.,* citing *Cupp v. Murphy,* 412 U.S. 291, 294-296, 93 S.Ct. 2000, 36 L.Ed.2d 900 (1973).

{¶ 18} Here, we conclude that compelling reasons and exceptional circumstances justified Conley's search of Braun's person after Braun voluntarily, and without instruction from either officer, handed Conley the jar of marijuana. Conley had probable cause that criminal activity was afoot, and it is well-settled that "marijuana and other narcotics are easily and quickly hidden or destroyed." *Id.* Under the totality of the circumstances, namely the marijuana pipe on the passenger seat of Braun's vehicle, Braun's advising Spradley that there was marijuana in the backseat of the vehicle, and Braun's voluntarily producing a jar containing marijuana from his clothing, Conley had probable cause to search Braun's person for evidence of criminal activity that, in the absence of the search, Braun could have removed from the scene upon his release.

{¶ 19} Braun's sole assignment of error is overruled.

{¶ 20} The judgment of the trial court is affirmed.

. . . . . . . . . . . . .

TUCKER, J. and LEWIS, J., concur.