**NOT RECOMMENDED FOR PUBLICATION**
File Name: 09a0341n.06
Filed: May 15, 2009

**No. 07-4441**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| AYESHA WILEY, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| | ) | THE NORTHERN DISTRICT OF |
| OBERLIN POLICE DEPARTMENT et al., | ) | OHIO |
| | ) | |
| Defendants, | ) | |
| | ) | |
| JAMES WALSH, SANDRA HOUGHLAND, CITY | ) | |
| OF OBERLIN, STEVE CHAPMAN, TIMOTHY | ) | |
| DIEWALD, MARK ELLIS, THOMAS MILLER, | ) | |
| MICHAEL MOORMAN, VINCENT ORTIZ, AND | ) | |
| HENRY WALLACE, | ) | |
| | ) | |
| Defendants-Appellees. | | |

Before:  SILER, GILMAN, and KETHLEDGE, Circuit Judges.

**SILER**, Circuit Judge.  Plaintiff Ayesha Wiley, *pro se*, appeals the district court's decision granting summary judgment to the Defendants – Sandra Houghland, the City of Oberlin, various City police officers, and the City prosecutor – because Wiley did not demonstrate an actionable violation of her constitutional rights.  She argues that the district court erred in granting the motion because it made incorrect findings of fact and ignored her constitutional claims.  For the following reasons, we **AFFIRM**.

**I.  FACTUAL AND PROCEDURAL BACKGROUND**

Wiley alleged that she was living with her ex-fiancé, John Howard, when he had a heart attack in August 2003. Many of her belongings were in his house, and she had possession of his car, wallet, credit cards, and bank book. After Howard's heart attack, his ex-live-in-girlfriend, Houghland, told the Oberlin City Prosecutor, James Walsh, that she wanted Howard's things and wanted Wiley out of his house. She persuaded Walsh to cause Wiley's arrest so that she could lock her out of Howard's house.

Wiley further alleged that Walsh instructed the Oberlin Police Department ("OPD") to arrest her for driving under a suspended license. On August 29, Wiley was arrested for this reason. Houghland and Howard's children used this opportunity to lock Wiley out of Howard's house, without a legal eviction proceeding, and steal her belongings. The arresting officers, Steve Chapman and Henry Wallace, took the car along with some of Wiley's property, and the property was never returned. The OPD failed to properly investigate her claim of stolen property.

Wiley also alleged that Walsh had her falsely arrested on two other occasions: (1) for domestic violence in September 2003 (Case No. 03CRB00952) and (2) for violation of a temporary protective order ("TPO") in October 2003 (Case No. 03CRB01013). She claims the prosecution of these cases terminated in her favor. However, the record includes conflicting evidence of the ultimate resolution: (1) Walsh made a motion to have both charges dismissed in January 2004, citing Howard's unavailability for trial, and (2) a journal entry stating that Wiley pled no contest to a charge of disorderly conduct in Case No. 03CRB00952 and charges of violating a protective order in Case No. 03CRB01013 were dismissed.

No. 07-4441
Wiley v. Oberlin Police Dep't. et al.

Wiley had five causes of action against various defendants: four federal claims, brought under 42 U.S.C. § 1983, for violations of the Fourth and Fourteenth Amendments and one state law claim for malicious prosecution. Count One alleged that the Oberlin Police Officer Defendants – Wallace, Chapman, Thomas Miller, Mark Ellis, Timothy Diewald, Michael Moorman, and Vincent Ortiz – violated her Fourth Amendment right to be free from unreasonable searches and seizures by stopping her vehicle on August 29, 2003, because of her race and without probable cause. Count Two alleged that the City Defendants (*i.e.*, the police officers and Prosecutor Walsh) violated the Fourteenth Amendment by acting recklessly and with callous indifference to her rights. Count Three alleged that the City Defendants prosecuted her without probable cause in violation of her rights under the Fourth and Fourteenth Amendments. Count Five alleged that the City's unconstitutional policies or failure to adequately train and manage the police officers resulted in the violation of her constitutional rights. Count Four alleged malicious prosecution under Ohio law.

The parties filed cross-motions for summary judgment. The district court denied Wiley's motion and granted the Defendants' motions, dismissing all charges. It reasoned that (1) the existence of probable cause for the arrests and prosecutions negated Wiley's Fourth Amendment and state law malicious prosecution claims; (2) her failure to show that she was targeted because of her race (rather than her personal relationship) or that similarly situated persons outside of her identifiable group were not prosecuted precluded her Fourteenth Amendment selective prosecution claim; (3) her failure to show that she was singled out for exercising a constitutional right or that Walsh had a personal stake in deterring her exercise of that right precluded her Fourteenth Amendment vindictive prosecution claim; (4) the lack of an underlying constitutional violation by

- 3 -

a City agent or employee precluded municipal liability as well as any conspiracy claim; (5)

allegations of negligence or conversion by City employees must be brought in state court; and (6)

the district court did not have jurisdiction over potential, unrelated state law claims (*i.e.*, for theft or

conversion) against Houghland.

## II. STANDARD OF REVIEW

We exercise de novo review over the district court's order granting summary judgment.

*Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 301 (6th Cir. 2005). We view the evidence in the

light most favorable to the party opposing summary judgment. *Voyticky v. Village of Timberlake*,

412 F.3d 669, 675 (6th Cir. 2005). In addition, because Wiley proceeded *pro se* before the district

court and on appeal, we will construe her pleadings and filings liberally. *See Boswell v. Mayer*, 169

F.3d 384, 387 (6th Cir. 1999).

## III. ANALYSIS

Wiley brought four federal claims pursuant to 42 U.S.C. § 1983. To state a § 1983 claim,

Wiley "must establish that a person acting under color of state law deprived [her] of a right secured

by the Constitution or laws of the United States." *Radvansky*, 395 F.3d at 302. Her federal claims

are based on alleged violations of the Fourth and Fourteenth Amendments: unreasonable seizure,

search, arrests, and prosecution; selective or vindictive prosecution; and inadequate training or

supervision. She also brought a state law claim for malicious prosecution.

Before analyzing each of these claims, the district court correctly concluded that summary

judgment should be granted to Defendants Captain Miller, Officer Ellis, Officer Diewald, Officer

Moorman, and Officer Ortiz. Wiley only alleged that these Defendants told her that the events

complained of were planned by Prosecutor Walsh, Officer Ellis taunted her, and Captain Miller told her that the police were not investigating her complaint of stolen property. These statements do not provide a basis for any constitutional violation.

## A. Fourth Amendment Claims (Counts One and Three)

If an officer has probable cause, then the resulting arrest or seizure will not violate the Fourth Amendment. *See Logsdon v. Hains*, 492 F.3d 334, 341 (6th Cir. 2007). Similarly, if a prosecutor has probable cause, then his decision to prosecute will not be malicious or a violation of the Fourth Amendment. *Voyticky*, 412 F.3d at 675. The district court properly granted summary judgment to the Defendants on all Fourth Amendment claims because of the existence of probable cause for each of the arrests and prosecutions at issue.

### 1. Search, Seizure, and Arrest for Operating a Motor Vehicle without a Valid License

The City Defendants had probable cause to stop Wiley for operating a motor vehicle with a suspended license. Officer Chapman stated in an affidavit that he observed Wiley driving, knew that her license was suspended, and confirmed his suspicion through the Oberlin Police Department Dispatcher's use of the Leads System before arresting her. *See United States v. Campbell*, 486 F.3d 949, 958 (6th Cir. 2007). Wiley does not challenge that Chapman knew her license was suspended or argue that she did not commit this violation, pleading no contest to the charge in 2004.

Even assuming that Chapman had other reasons for stopping Wiley, they are not relevant to the Fourth Amendment inquiry. *See Whren v. United States*, 517 U.S. 806, 813 (1996) ("Subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis."); *United States v. Ferguson*, 8 F.3d 385, 391 (6th Cir.1993) ("We focus . . . on whether this particular officer in fact

had probable cause to believe that a traffic offense had occurred. . . . [I]t is irrelevant what else the officer knew or suspected about the traffic violator at the time of the stop."). Further, even if Chapman had searched her vehicle, such a search would not violate the Fourth Amendment. *See Campbell*, 486 F.3d at 958 ("[P]olice officers are permitted to search the vehicle associated with a defendant's lawful arrest for the purpose of taking an inventory of its contents prior to impoundment, even if the police have no probable cause to otherwise search the vehicle.").

## 2. Arrest for Domestic Violence

The City Defendants had probable cause to arrest Wiley for domestic violence. After receiving a 9-1-1 call from Howard that his girlfriend was attacking him, Officer Diewald responded to Howard's residence. Howard told him that Wiley had hit him in the chest where he had recently received a pacemaker, showed him the redness in the area of the alleged attack, and requested charges against Wiley for domestic violence and a temporary restraining order. Sergeant Barnes took a written statement from Howard, confirming the statements made to Officer Diewald, as well as two pictures of his chest injuries. Howard's statements, the observations of the responding officers, and the photographs provided sufficient evidence of probable cause for the arrest. *See Thacker v. City of Columbus*, 328 F.3d 244, 257 (6th Cir. 2003). Wiley provided an alternative explanation for the physical altercation, but she does not dispute Howard's statements or information in the police reports that she hit him in the chest.

## 3. Arrest for Violating Temporary Protective Order

The City Defendants had probable cause to arrest Wiley for violation of a TPO. In September 2003, the Oberlin Municipal Court issued a TPO in connection with the domestic

violence charge providing that Wiley "shall not initiate any contact with" Howard, his residence, or his place of employment. Howard worked for Oberlin College. In October 2003, the OPD received a call from Oberlin College Safety and Security Officer Wohleber that Wiley had contacted Oberlin College employee Debra Thomas several times. Thomas provided a written statement to Oberlin College and told Sergeant Ramsdell that she had received several calls from Wiley asking her to retrieve some of Wiley's property from Howard's residence. Thomas requested that Ramsdell ask Wiley to stop calling her, and the report stated that he did so. Later, Houghland told Officer Ellis that Wiley was still calling Thomas, and he confirmed the allegations with Thomas. The witness statement and communications detailed in the investigative supplements provided sufficient evidence of probable cause for the arrest. Wiley does not dispute that she called Oberlin College and asked Thomas to get some of her belongings. She also does not challenge the veracity of the information in the police reports.

### 4. Malicious Prosecution

The district court correctly found that Wiley could not prevail on her § 1983 claim for malicious prosecution arising under the Fourth Amendment. This court has explained "that such a claim fails when there was probable cause to prosecute." *Fox v. DeSoto*, 489 F.3d 227, 237 (6th Cir. 2007). Wiley failed to show that Prosecutor Walsh lacked probable cause to initiate proceedings for the charges of domestic violence or violating a protective order. As explained above, the police officers had probable cause to arrest Wiley on these charges. In turn, the information provided by the police reports and investigative supplements provided Walsh with sufficient evidence of probable cause to prosecute.

**B. Fourteenth Amendment Claims (Count Two)**

The Fourteenth Amendment provides two possible causes of action for prosecutorial decisions: selective prosecution and vindictive prosecution. *United States v. Anderson*, 923 F.2d 450, 453 (6th Cir. 1991). The district court correctly determined that Wiley failed to establish the elements for either.

To state a claim for selective prosecution, the plaintiff must show three elements: (1) the state actor singled out a person belonging to a protected, identifiable group; (2) the state actor initiated prosecution with a discriminatory purpose; and (3) the prosecution had a discriminatory effect on the group identified. *Stemler v. City of Florence*, 126 F.3d 856, 873 (6th Cir. 1997) (quoting *Anderson*, 923 F.2d at 453). The plaintiff must show that "similarly situated persons outside her category were not prosecuted," and the district court properly granted summary judgment to the City Defendants because Wiley offered no evidence of such dissimilar treatment. *Id.* It also properly noted that Wiley's filings indicate that she was "targeted" because of her personal relationships, rather than her national origin or race, which would not result in a constitutional violation.

To state a claim for vindictive prosecution, a plaintiff must show that the prosecutor acted "to deter the exercise of a protected right by the person prosecuted" or that the prosecutor had a "stake" in deterring that person from exercising his rights and his conduct was unreasonable. *Anderson*, 923 F.2d at 453-54. The district court properly found that such a claim could not survive summary judgment because Wiley did not show that she was targeted for the exercise of a constitutional right or that Walsh had a stake in deterring her from exercising that right.

**C. State Law Malicious Prosecution Claim (Count Four)**

The district court correctly concluded that Wiley could not succeed on her state law malicious prosecution claim because of the existence of probable cause. It properly relied on its analysis of probable cause for the federal malicious prosecution claims because of the similarity between the state and federal definitions of probable cause. *See United States v. Campbell*, 486 F.3d 949, 957 (6th Cir. 2007) (definition of probable cause for Fourth Amendment purposes); *State v. Moore*, 734 N.E.2d 804, 806-07 (Ohio 2000) (explaining that the Ohio Constitution and Fourth Amendment provide "nearly identical" protection from unreasonable searches and seizures and referencing federal standards in the analysis of probable cause under state law).

## D.  Municipal Liability (Count Five)

A municipality may be liable under § 1983 for inadequate police training "only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton v. Harris*, 489 U.S. 378, 388 (1989). However, because Wiley failed to demonstrate a constitutional violation by any of the City Defendants, the district court correctly determined that her claim for municipal liability must also fail. *See Fox*, 489 F.3d at 238.

## E.  Other Possible Claims

The district court also properly identified other possible causes of action from Wiley's complaint: (1) negligence or conversion of property by the City Defendants, (2) conspiracy to violate her constitutional rights (that included the police officers and Houghland), and (3) state law claims against Houghland such as improper eviction, theft, or conversion of her property. Then, it properly found that these claims either lacked merit or were not properly before it. Wiley cannot bring a claim under § 1983 for the recovery of items that were lost or stolen by the police because she has

not shown that Ohio law does not provide an adequate remedy. *See Hudson v. Palmer*, 468 U.S. 517, 530-33 (1984). Similar to the municipal liability claim, Wiley cannot succeed on a conspiracy claim because there was no underlying constitutional violation that injured her. *See Bauss v. Plymouth Twp.*, 233 F. App'x 490, 500 (6th Cir. 2007) (citing *Hooks v. Hooks*, 771 F.2d 935, 943-44 (6th Cir. 1985)). Finally, potential state law claims against Houghland are unrelated to the § 1983 claims, and the district court did not have federal jurisdiction over them.

**AFFIRMED.**